IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT HEDRICK, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| A.O. SMITH CORP., et al., | : | No. 16-476 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                    **May 22, 2018**

      Robert Hedrick alleges that he developed lung cancer as a result of exposure to asbestos while serving in the U.S. Navy from 1953 to 1957. He claims that he was regularly exposed to asbestos in his work in the boiler rooms and engine rooms of four different naval vessels. Hedrick sued a number of manufacturers whose products he claims contained asbestos. Five of the remaining Defendants (the "Moving Defendants") have filed motions for summary judgment. For the reasons discussed below, the Court grants the motions of Ingersoll-Rand Co., Superior-Lidgerwood-Mundy Corp., and Warren Pumps, LLC, and denies the motions of Air & Liquid Systems Corp. and Crane Co.

**I.     BACKGROUND**

      **A.     Hedrick's Alleged Asbestos Exposure History**

      Hedrick enlisted in the Navy in 1953. (Pls.' Resp. to Ingersoll-Rand Corp.'s Mot. for Summ. J. [Pls.' Resp. to Ingersoll], ECF No. 207, at 2.) Over the next four years, he worked on four different naval vessels: the USS Cabot, USS Roan, USS Boston, and USS New Jersey. (*Id.*) He began his service as a seaman apprentice, and then became a fireman apprentice, a fireman,

and finally a machinist's mate. (*Id.*) In these capacities, Hedrick did varying amounts of work in the boiler rooms and engine rooms of the ships. (*Id.* at 3–4.)

Hedrick claims that his work regularly exposed him to asbestos. His duties at times included removing and replacing insulation on piping; when he did this, he disturbed asbestos dust in the insulation and breathed it in. (*Id.* at 3.) Hedrick also removed and replaced packing from pumps once or twice a month. (*Id.* at 9.) He describes this as a "two-hour process" that involved several minutes of cutting asbestos-containing packaging, which was often dry and would come apart as he removed it. (*Id.*) In addition, Hedrick often replaced asbestos-containing gaskets on valves and pumps. This involved using a scraper to scrape off the old gaskets, which were dry and came off in pieces; the scraping process took 20 to 40 minutes. (Pls.' Resp. in Opp'n to SLM's Mot. for Summ. J. [Pls.' Resp. to SLM], ECF No. 208, at 7–8.)

Hedrick claims that his asbestos exposure, both by itself and in combination with his cigarette smoking, caused him to develop lung cancer. (*See* Pls.' Resp. to Ingersoll at 11–12.) Hedrick's medical expert opines that his smoking was a minor cause, if any, because he quit smoking 47 years before his cancer was first detected. (*Id.*)

**B.     Hedrick's Alleged Exposure to Defendants' Products**

　　　　1.     *Ingersoll-Rand*

Hedrick claims that Ingersoll-Rand supplied pumps incorporating asbestos-containing parts to each of the ships he worked on. (Pls.' Resp. to Ingersoll at 6.) For instance, he claims it supplied fluid circulating pumps to the Boston and main feed pumps to the New Jersey. (*Id.*) Hedrick claims that he worked on both of these pumps. (*Id.* at 14.)

### 2. *Superior-Lidgerwood-Mundy*

Hedrick sued Superior-Lidgerwood-Mundy ("SLM") as the successor-in-interest to Davidson Co. Hedrick claims that Davidson supplied brine pumps and seawater circulating pumps to the Boston. (Pls.' Resp. to SLM at 9.) He claims that he worked on both of these pumps. (*Id.*)

### 3. *Warren Pumps*

Hedrick alleges little in the way of specific exposure to materials supplied by Warren Pumps. He claims that Warren Pumps supplied a variety of pumps to the Boston, as well as pumps to the Cabot and Roan. (Pls.' Resp. in Opp'n to Warren Pumps, LLC's Mot. for Summ. J., ECF No. 209, at 8.) Hedrick claims that he worked in the engine rooms of each of these ships. (*Id.* at 16.)

### 4. *Air & Liquid Systems*

Hedrick sued Air & Liquid as the successor-in-interest to Buffalo Pumps, Inc. Hedrick testified in a previous lawsuit that he thought he remembered seeing Buffalo pumps on the Roan. (Pls.' Resp. in Opp'n to Air & Liquid Sys. Corp.'s Mot. for Summ. J. [Pls.' Resp. to ALSC], ECF No. 205, Ex. F.) He also claims that Buffalo Pumps supplied circulating pumps to the Roan and the Boston, and both main feed booster pumps and condensate pumps to the Boston and New Jersey. (Pls.' Resp. to ALSC at 15.) Hedrick claims to have worked on each of these pumps. (*Id.* at 10–11.)

### 5. *Crane*

Hedrick claims that Crane supplied asbestos-containing valves to each of the ships he worked on, including gaskets and asbestos packing. (Pls.' Resp. in Opp'n to Crane Co.'s Mot. for Summ. J. [Pls.' Resp. to Crane], ECF No. 211, at 13.) Indeed, he claims that Crane "was one

of the most significant material suppliers" for each of the ships he worked on. (*Id.* at 7.) Hedrick alleges that he frequently changed packing on valves on the ships he worked on. On the Roan, for instance, he testified that 80 percent of his work involved changing insulation, packing, and gaskets. (*Id.* at 8.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the party has done so, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not make credibility determinations or weigh the evidence in considering motions for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

## III. APPLICABLE LAW

### A. Maritime Law Applies

Maritime law applies in asbestos cases if the exposure at issue meets both a locality test and a connection test. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–66 (E.D. Pa. 2011).

4

The locality test "is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id.* at 466. The connection test is met if the exposure "had a potentially disruptive impact on maritime commerce" and "the general character of the [tortfeasors'] activity giving rise to [the exposure] shows a substantial relationship to traditional maritime activity." *Id.* at 463.

Both the locality test and the connection test are met here. Hedrick's alleged asbestos exposure occurred at least in part on naval vessels on navigable waters. The exposure also potentially had a disruptive impact on maritime commerce, and because Defendants manufactured asbestos-containing products for use on vessels, there is a substantial relationship to traditional maritime activity. *See id.* at 469. Because both tests are met, maritime law governs in this case.

### B. Causation Standard under Maritime Law

To succeed on either a negligence or a strict liability theory under maritime law in a products liability case, a plaintiff must establish causation. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). To do so, a plaintiff must show: "(1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012). Causation is evaluated for each defendant separately. *Id.*

A plaintiff may demonstrate that a defendant's product was a substantial factor using either direct evidence or "circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, Civ. A. No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012). A demonstration of "minimal exposure" to a defendant's product is not sufficient. *Id.* Rather, the plaintiff must show

5

"*substantial* exposure" in order to allow a reasonable inference—based on more than conjecture—that the defendant's product was a substantial factor in causing the plaintiff's injury. *Lindstrom*, 424 F.3d at 492. "[T]he question of 'substantiality' is one of degree normally best left to the fact-finder." *Abbay*, 2012 WL 975837, at *1 n.1 (*citing Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir.1995)).

## IV. DISCUSSION

Hedrick's testimony demonstrates that he was exposed to asbestos. In addition, Hedrick has offered an expert report to support his claim that his exposure to asbestos caused his lung cancer. (Pls.' Resp. to ALSC Ex. S [Miller Rep't].)

However, with one exception noted below, Hedrick did not identify any of the Moving Defendants by name as a manufacturer of a product he encountered. Hedrick testified that most of the equipment he worked on "was Navy gray, . . . or insulated"—meaning any manufacturer-identifying markings were not visible. (Pls.' Resp. to Ingersoll Ex. A [Hedrick Dep.] Sept. 13, 2016 at 107.) Because he did not identify individual manufacturers, Hedrick lacks sufficient direct evidence to demonstrate regular exposure to each Defendant's products. Instead, Hedrick relies on the combination of his testimony with Navy records and an expert report from Captain R. Bruce Woodruff, a former Engineering Duty Officer who served twenty-nine years in the Navy and "was responsible for the design, construction and maintenance of a wide range of" naval vessels. (Mem. of Law in Supp. of Def. Ingersoll-Rand Co.'s Mot. for Summ. J., ECF No. 195, Ex. D [Woodruff Aff.] at 2.)

Because the Court finds that Hedrick has established a genuine issue of material fact as to whether his exposure to asbestos caused his illness, the question for each of the Moving

Defendants is whether he has presented sufficient evidence of exposure to their products to survive summary judgment.

### A. Ingersoll-Rand

Hedrick has presented evidence that Ingersoll-Rand supplied, among other things, fluid circulating pumps to the Boston and main feed pumps to the New Jersey. (Pls.' Resp. to Ingersoll Ex. G; Woodruff Aff. at 19–20.) Hedrick testified generally that he worked on circulating pumps and "sometimes" on main feed pumps adjusting asbestos-containing insulation during his time in the Navy. (Pls.' Resp. to Ingersoll at 14; Hedrick Dep. Sept. 14, 2016 at 98–100.)

However, Hedrick never testified specifically to working on a main feed pump on the New Jersey. Moreover, when asked in his deposition whether he or someone in his presence worked on the "circulating pump" on the Boston, Hedrick responded, "I don't remember." (Hedrick Dep. Sept. 13 at 325.)

Based on this limited testimony, no reasonable person could find, without relying on conjecture, that Hedrick regularly worked on Ingersoll-Rand products. The Court grants Ingersoll-Rand's motion for summary judgment.

### B. Superior-Lidgerwood-Mundy

As noted, Hedrick sued SLM as the successor-in-interest to Davidson. Hedrick has offered ship records that arguably demonstrate that Davidson supplied brine pumps and seawater circulating pumps to the Boston. (Pls.' Resp. in Opp'n to SLM's Mot. for Summ. J., ECF No. 208, at 9, Exs. B, C. *But see* Woodruff Aff. at 19 (lists other companies, not Davidson, as suppliers of brine and salt water circulating pumps to the Boston).) Hedrick testified generally that he worked on both of these types of pumps during his time in the Navy. (Hedrick Dep. Sept. 14 at 96, 98–99.)

As SLM notes, however, Hedrick estimated that he only worked on the brine pump on the Boston once. (*See* Hedrick Dep. Sept. 13 at 325.) Hedrick also testified that he did not remember whether he or someone in his presence worked on a circulating pump on the Boston on more than one occasion. (*Id.*)

This evidence is insufficient to survive summary judgment. Hedrick's testimony on a single occasion that he worked on a brine pump allegedly manufactured by Davidson does not establish more than "minimal" exposure. In addition, the combination of Hedrick's testimony regarding his work on pumps in general and the ship records placing Davidson pumps on the Boston is not sufficient, because it would require speculation to conclude from these facts that Hedrick regularly worked on Davidson pumps. The Court grants SLM's motion for summary judgment.

## C. Warren Pumps

Hedrick's response to Warren Pumps provides little in the way of specific evidence as to his work on Warren products. According to Woodruff, the Boston contained several pumps supplied by Warren, including a saltwater circulating pump, a brine overboard pump, and a main feed pump. (Woodruff Aff. at 19.) As noted above, Hedrick testified to working on the brine discharge pump on the Boston once. (Hedrick Dep. Sept. 13 at 325.) He also testified generally that he worked on "seawater circulating pump[s]." (Hedrick Dep. Sept. 14 at 98–99.) Hedrick also testified to "sometimes" working on a "main feed booster pump." (*Id.* at 100.)

This evidence is not sufficient to allow a reasonable jury to find that the products were a substantial factor in causing Hedrick's cancer. Again, Hedrick's testimony that he worked on a brine pump on the Boston once does not establish more than minimal exposure. Nor does Hedrick's generalized testimony regarding his work on pumps—even when combined with the

record evidence—allow a reasonable inference of regular exposure. The Court grants Warren Pumps' motion for summary judgment.

### D. Air & Liquid Systems

As noted, Hedrick sued Air & Liquid as the successor-in-interest to Buffalo Pumps. Woodruff asserts that Buffalo supplied circulating pumps to the Roan and Boston, and both main feed booster pumps and condensate pumps to the Boston and New Jersey. (*See* Woodruff Aff. at 18–20.) Hedrick testified that he "sometimes" worked on main feed booster pumps, and testified specifically that he worked on condensate pumps on both the Boston and New Jersey. (Hedrick Dep. Sept. 14 at 100, 103–04.) He also testified, in a previous lawsuit, "I think I remember Buffalo" pumps on the Roan. (Pls.' Resp. to ALSC, Ex. F.)

Viewing this evidence in the light most favorable to Hedrick, the Court concludes that a jury could reasonably find that Hedrick was regularly exposed to asbestos from Buffalo products. Hedrick claimed to remember specific Buffalo pumps on one ship and claimed to work on pumps allegedly supplied by Buffalo Pumps on two other ships. Whether Hedrick's exposure to asbestos on Buffalo pumps was "substantial" is a question of fact. *Abbay*, 2012 WL 975837, at *1 n.1. The Court denies Air & Liquid's motion for summary judgment.

### E. Crane

According to Woodruff and Navy records, Crane supplied valves for each of the four ships Hedrick worked on. (Woodruff Aff. at 17–20; Pls.' Resp. to Crane Exs. E, F.) Woodruff also suggests that Crane was the sole supplier of valves to the Cabot. (Woodruff Aff. at 17.) Hedrick testified that he worked on valves "often" because maintenance of valves "was [his] job," and that on any given day he "could work on a handful of valves or none." (Hedrick Dep.

Sept. 14 at 155–56.) In addition, Hedrick testified that 80 percent of his work on the Roan involved changing insulation, packing, and gaskets. (Pls.' Resp. to Crane at 8.)

This evidence could allow a factfinder to reasonably conclude that Hedrick regularly worked on Crane valves containing asbestos on multiple naval vessels. Thus, whether Crane products were a substantial factor in causing Hedrick's lung cancer is a question of fact. The Court denies Crane's motion for summary judgment.

## V.     CONCLUSION

Hedrick has offered evidence that could allow a jury to find that his exposure to asbestos-containing equipment supplied by Air & Liquid Systems and Crane was a substantial factor in causing his lung cancer. He has not, however, offered sufficient evidence as to the other Moving Defendants. Therefore, the Court denies Air & Liquid's and Crane's motions for summary judgment, and grants the motions of the other Moving Defendants. An appropriate Order will be docketed separately.